UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-CV-20772-GAYLES/LOUIS

DENNIS ANEIROS,

     Plaintiff,

vs.

VIORMAR TRADING
CORPORATION, N.V., AND
ORLANDO A. FERNANDEZ,

     Defendants.

_____/

**PLAINTIFF'S RESPONSE AND
<u>COUNTER-MOTION FOR SUMMARY JUDGMENT</u>
(ALL COUNTS – LIABILITY)**

Plaintiff, Dennis Aneiros ("Mr. Aneiros"), pursuant to Local Rule 7.1, Fed. R. Civ. P. 56, and Local Rule 56.1, responds to Defendants' Motion for Summary Judgment and requests that the Court enter summary judgment in his favor (as to liability) with respect to all counts of the Second Amended Complaint [ECF No. 29]. As grounds, Mr. Aneiros states as follows:

## I. INTRODUCTION

First, with regard to Mr. Aneiros' claims for unpaid minimum wages under the Fair Labor Standards Act ("FLSA") and Florida Minimum Wage Act ("FMWA") at Counts I and II of the Second Amended Complaint, Mr. Aneiros is entitled to a summary determination that he was an employee of Defendants, and that his work for Defendants falls within the purview of the FLSA under a theory of individual coverage—thereby subjecting Defendants to the minimum wage requirements of the FLSA and FMWA, and to joint and several liability for Mr. Aneiros' minimum wage claims. Additionally, as to his claim for forced labor under the Trafficking Victims Protection

Act ("TVPA") at Count III, Mr. Aneiros has proffered sufficient evidence to sustain the entry of summary judgment determining that Defendants procured his labor through forced and/or coercive means by threatening him with serious harm if he ceased working for them. With these determinations already made, the trial in this case can be reduced to asking the jury to determine the extent of Mr. Aneiros' damages caused by Defendants, and post-trial issues of whether to impose liquidated damages and the amount of attorneys' fees and costs to award him.

## II. PROCEDURAL HISTORY

1.      Mr. Aneiros initiated this lawsuit by filing a two-count Complaint under the FLSA and Trafficking Victims Protections Act ("TVPA"), seeking to recover minimum wages for work that Defendants forced and/or coerced him to perform. *See* ECF No. 1.

2.      Defendants responded to the Complaint by filing their Motion to Dismiss Count I (Mr. Aneiros' claim for forced labor under the TVPA), asserting that Mr. Aneiros failed to allege: (i) which "prong" under 18 U.S.C. § 1598 Defendants have violated; and (ii) that he was threatened with "serious harm" within the meaning of the TVPA. *See* ECF No. 7.

3.      Mr. Aneiros amended his Complaint by adding a third count for unpaid minimum wages under the Florida Minimum Wage Act. *See* ECF No. 13.

4.      In response to the Amended Complaint, Defendants again moved for dismissal of Mr. Aneiros' TVPA claim, premised on the same grounds asserted in their first Motion to Dismiss. *See* ECF No. 16.

5.      Ruling on Defendants' second Motion to Dismiss [ECF No. 16], the Court found that Defendants' asserted grounds for dismissal were "without merit," and that Mr. Aneiros had sufficiently alleged that Defendants threatened him with "serious harm" by telling him "that if he did not continue to perform the work requested for no monetary compensation, they would not

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

allow him to continue staying on the property—thereby forcing him into homelessness." ECF No. 28 at 5-6.

6.      However, finding that the Amended Complaint constituted a shotgun pleading due to Count II's adoption of allegations in the preceding count, Mr. Aneiros' FMWA claim was dismissed without prejudice. *See* ECF No. 28 at 3-4.

7.      Mr. Aneiros corrected this inadvertent technical deficiency within the pleading by filing the Second Amended Complaint, again asserting three counts under the FLSA (Count I), FMWA (Count II), and TVPA (Count III). *See* ECF No. 29.

8.      Defendants responded to the Second Amended Complaint by filing their Answer and Affirmative Defenses, asserting that: (i) Defendants were not Mr. Aneiros' employer, and Mr. Aneiros was not their employee under the FLSA; and (ii) any violation of the FLSA committed by Defendants was made in good faith. *See* ECF No. 30.

9.      The undersigned has taken the depositions of Defendant Fernandez, who is the president and owner of Viormar, as well as his daughter, the vice president of Viormar—during which they admitted that Mr. Aneiros has lived and worked in the warehouse owned by Viormar (the "Viormar Warehouse"), without pay, during the ten-year period preceding the initiation of this lawsuit.

10.      Defendants' counsel has taken the deposition of Mr. Aneiros, who similarly attested to the work he performed for Defendants' benefit through forced and/or coercive means.

11.      The parties attended mediation on July 31, 2024, which resulted in an impasse. *See* ECF Nos. 27, 31.

12.      To date, Defendants have not served Mr. Aneiros with any written discovery requests.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

13.     Defendants filed their Motion for Summary Judgment as to all counts of the Second Amended Complaint on December 20, 2024. *See* ECF No. 33.

14.     This case is currently set for trial during the Court's two-week trial calendar beginning March 24, 2025, with calendar call set for March 19, 2025. *See* ECF No. 25.

### III. SUMMARY JUDGMENT STANDARD

In Defendants' Motion for Summary Judgment, Defendants cite to Florida Rule of Civil Procedure 1.510 as the applicable standard governing the Court's determination of whether summary judgment should be granted. *See* ECF No. 33 at 4-5. However, this Court's determination must be guided by Federal Rule of Civil Procedure 56 given that the Federal Rules "govern the procedure in all civil actions and proceedings in the United States district courts[.]" Fed. R. Civ. P. 1. Summary judgment is appropriate under Rule 56(c) if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law that might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646.

The Court must view all evidence and all reasonable factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322–23; *Allen*, 121 F.3d at 646. The inferences to be drawn at summary judgment must be "reasonable" and not speculation or pure conjecture:

> While we draw "all reasonable inferences" in the light most favorable to Vera, as the nonmoving party, we will not "draw *unreasonable* inferences or credit bald assertions, empty conclusions, [or] rank conjecture." *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8

4

(1st Cir.2007) (emphasis in original).

*Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment once that burden is met. *Anderson*, 477 U.S. at 252.

The nonmoving party, "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough either. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot form basis for denying summary judgment); and *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact."). A party cannot "create" issues of fact by attempting to contradict clear deposition testimony with a conflicting affidavit. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

When the entire record could not lead a rational trier of fact to find in the non-movant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

# IV. ARGUMENT

### A. <u>Mr. Aneiros was an Employee of Viormar</u>

Defendants' contention that Mr. Aneiros was an independent contractor, rather than an employee of Defendants, cannot be harmonized with the "expansiveness" of the FLSA's definition of "employer". *Falk v. Brennan*, 414 U.S. 190, 195 (1973). The economic reality of the parties' relationship demonstrates Mr. Aneiros' dependence on Defendants with respect to the work he performed for their benefit, thereby establishing that Viormar was his employer under the FLSA and FMWA. The Eleventh Circuit Court of Appeals has set forth the following criteria for determining whether an employment relationship exists within the meaning of the FLSA:

> The protections of the FLSA extend only to "employees." *Scantland*, 721 F.3d at 1311. An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to any employee." *Id.* § 203(d). The term "employ" means "to suffer or permit to work." *Id.* § 203(g). The FLSA does not cover "independent contractors." *See Scantland*, 721 F.3d at 1311. To determine whether a person is an employee or independent contractor for purposes of the FLSA, courts look to the "economic reality" of the relationship between the alleged employee and employer and whether that relationship demonstrates dependence. *Id.* The economic reality inquiry is not governed by the "label" put on the relationship by the parties or the contract that controls their relationship. *Id.*

*Nieman v. Nat'l Claims Adjusters, Inc.*, 775 Fed. Appx. 622, 624 (11th Cir. 2019). In conducting this economic reality inquiry, courts within the Eleventh Circuit analyze the following factors:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013). The undisputed facts in this case demonstrate that Defendants directed and/or permitted Mr. Aneiros to perform work for

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

their benefit, and that Mr. Aneiros was economically dependent upon Defendants with respect to the work he performed—thereby bringing Mr. Aneiros within Defendants' employ.

### i.  Control Over Work Performed

Viormar, through its owner/president, Defendant Fernandez, controlled the manner in which Mr. Aneiros performed his work for Viormar. Defendant Fernandez has served as an officer/director of Viormar since 2012 (ECF No. 34, at ¶ 27), and regularly instructed Mr. Aneiros to perform maintenance and renovation work at the Viormar Warehouse according to Defendant Fernandez's specifications. (*Id.* at ¶¶ 43-45.) These job duties and Defendant Fernandez's acknowledgment of the same are evidenced through his written letter to a commercial tenant of the Viormar Warehouse, Jessy's Limousines. In this letter, Defendant Fernandez states that Mr. Aneiros was appointed in charge of the care, order, and maintenance of the Viormar Warehouse. (ECF No. 34-13.) Defendant Fernandez' control over Mr. Aneiros' maintenance/renovation duties is further exhibited through text messages exchanged between the two, wherein Fernandez directs Mr. Aneiros to install lights at the Viormar Warehouse that Fernandez purchased, and instructs him how to perform that work. (ECF No. 34-14, at 36-44, 48-50, 54, 57.)

In another letter written by Defendant Fernandez to Mr. Aneiros, Fernandez acknowledged that Mr. Aneiros had been receiving Fernandez's mail at the Viormar Warehouse and forwarding it to him for months, thanked Mr. Aneiros for his work, and instructed him to post Viormar's Local Business Tax Receipt in a visible place inside of the Viormar Warehouse. (ECF No. 34-15.) Defendant Fernandez further exhibited his control over Mr. Aneiros' work by sending text messages to Mr. Aneiros instructing him to remain at the Viormar Warehouse to receive shipments to Viormar. (ECF No. 34-1, at 73, 4-16.)

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Additionally, Defendant Fernandez exerted control over Mr. Aneiros' work by instructing him to: (i) find prospective commercial tenants to rent space in the Viormar Warehouse, and to evict current tenants for failing to pay rent (ECF No. 34, at ¶ 47); (ii) coordinate with specific contractors to perform work at the Viormar Warehouse (*Id.* at ¶ 54(iv)); and (iii) send and receive packages and correspondence for Viormar through the mail using packaging materials and postage which Defendant Fernandez provided to him (*Id.* at ¶¶ 49-51).

Given Defendants' level of direction and control over the work Mr. Aneiros performed for their benefit, the first *Scantland* factor weighs heavily in favor of Mr. Aneiros' status as an employee.

### ii.    Opportunity for Profit or Loss

Analyzing the second *Scantland* factor, "[a] worker's opportunity for profit or loss suggests independent contractor status where that opportunity is related to the worker's exercise of managerial skills such as initiative, judgment and foresight. In contrast, opportunities for profit or loss based on the worker's efficiency or technical proficiency are not particularly meaningful in distinguishing between employees and independent contractors." *Artola v. MRC Express, Inc.*, No. 14-cv-23219-Seitz, 2015 U.S. Dist. LEXIS 130183, at *22 (S.D. Fla. Sep. 25, 2015). Where the worker's opportunity for profit or loss is based on factors beyond their control, or on their efficiency rather than managerial skill, "[t]his suggests a finding that [the worker's] opportunity for profit or loss was similar to that of an employee." *Id.* at *23. Additionally, where a defendant-employer's risk of profit and loss far exceeds that of the plaintiff-employee, the defendant-employer is found to exercise significant control over the plaintiff's opportunity for profit, weighing "strongly in favor of finding an employer-employee relationship." *Shaw v. Set Enters., Inc.*, 241 F. Supp. 3d 1318, 1326 (S.D. Fla. 2017).

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Here, Mr. Aneiros' opportunity for profit or loss was based on factors wholly beyond his control, and was held solely in the hands of Viormar and its owners/officers. Within the parties' working relationship, only Viormar and its owners/officers possessed the ability to gain or lose profit from Mr. Aneiros' work, as Defendants did not pay Mr. Aneiros whatsoever for the work they directed and/or permitted him to perform for their benefit. (ECF No. 34 at ¶ 35, 56.) Therefore, the second *Scantland* factor also indicates Mr. Aneiros' status as an employee.

### iii.    Investment in Equipment or Materials

Third, Mr. Aneiros worked for Viormar using tools and materials that Defendant Fernandez purchased and gave to him for the purpose of performing manual labor at the Viormar Warehouse. (ECF No. 34 at ¶¶ 12, 45, 46, 49.) Mr. Aneiros did not employ any individuals to assist him with this work. Mr. Aneiros' level of economic dependence on Defendants to perform his job duties, coupled with the fact that he invested no money whatsoever in connection with those job duties, demonstrate that Mr. Aneiros was not "in business for himself." *See Artola*, 2015 U.S. Dist. LEXIS 130183, at *25-26. Therefore, the third *Scantland* factor also weighs heavily in favor of establishing the existence of an employer-employee relationship between the parties.

### iv.    Specialized Skill

As to the fifth factor, Mr. Aneiros' work for Defendants required no specialized skill, again indicating the existence of his employment relationship with Defendants. Mr. Aneiros performed manual labor for Defendants including cleaning the Viormar Warehouse, removing debris, painting and pressure washing the warehouse, repairing/destroying walls, fixing lights, and sending/receiving mail. (ECF No. 34 at ¶¶ 42-44, 49-51.) Manual labor is not a "special skill." *See Artola*, 2015 U.S. Dist. LEXIS 130183, at *26. In addition to these job duties, Mr. Aneiros was responsible for finding and evicting commercial tenants of the Viormar Warehouse, depositing

9

checks into Viormar's bank account, meeting with building inspectors and contractors, and coordinating with contractors to perform work at the Viormar Warehouse. (ECF No. 34 at ¶¶ 47, 52, 54.) This work requires no specialized training. Mr. Aneiros has never gone to school, and holds no professional licenses. (ECF No. 34-1 at 26:22-27:1, 52:2-4.) Therefore, Mr. Aneiros' lack of formal training or certification in connection with his job duties for Defendants "weighs toward employee status as to this factor." *Artola*, 2015 U.S. Dist. LEXIS 130183, at *26; *see Shaw*, 241 F. Supp. 3d at 1326 (finding that the fourth *Scantland* factor weighs heavily in favor of "employee" status where workers were not required to have any formal training or prior experience).

### v.     Permanency/Duration of the Working Relationship

The duration and permanency of Mr. Aneiros' work for Defendants also indicates the existence of an employment relationship. "A longer, more permanent working relationship weighs toward employee status because it suggests heightened economic dependence on an employer's business, whereas finite, non-exclusive work relationships allow for the greater economic business entity which operates independently from an alleged employer." *Artola*, 2015 U.S. Dist. LEXIS 130183, at *27. Here, Mr. Aneiros has worked for Defendants for at least ten years, weighing heavily in favor of Mr. Aneiros' status as an employee. (ECF No. 34 at ¶¶ 32, 35, 56.)

### vi.     Services Integral to the Employer's Business

The final *Scantland* factor also weighs toward a finding that Defendants were Mr. Aneiros' employer under the FLSA and FMWA given that his work was essential to Defendants' business operation. Defendant Fernandez testified that Viormar engages in the business of renting warehouse space to commercial tenants as a primary purpose of the corporation. (*Id.* at ¶ 30.) Undoubtedly, Mr. Aneiros' job duties of maintaining, cleaning, and repairing the Viormar Warehouse, finding and evicting tenants, sending and receiving mail to/from the Viormar

10

Warehouse, and depositing checks into Viormar's bank account are essential to its business operation. Therefore, given that each *Scantland* factor weighs in favor of Mr. Aneiros' status as an employee, the Court properly finds that Viormar was his employer within the meaning of the FLSA and FMWA.

### B. <u>Defendant Fernandez was Plaintiff's "Employer" Under the FLSA</u>

The FLSA creates a private right of action against any employer who violates its minimum wage or overtime provisions, defining the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Spears v. Bay Inn & Suites Foley, LLC*, No. 22-13376, 2024 U.S. App. LEXIS 15002, at *5 (11th Cir. June 20, 2024) (citing 29 U.S.C. §§ 216(b), 203(d)). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983)).

The Eleventh Circuit Court of Appeals recently addressed individual liability under the FLSA in *Spears*:

> Though the FLSA 'contemplates at least some individual liability," Congress intended to impose liability upon those who "'control[ ] a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.'" *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1314 (11th Cir. 2013) (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998)).
> . . .
> The analysis should focus on "the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits. In addition to direct evidence of such a role, other relevant indicia may exist as well—for example, an individual's operational control over significant aspects of the business and an individual's ownership interest in the business. Such indicia, while not dispositive, are important ... because they suggest that an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA." *Baystate*, 163 F.3d at 678. Otherwise, supervisors may find themselves individually liable under

the FLSA even though they have nothing to do with the compensation of employees—the very thing the FLSA is concerned with. *See Manning v. Boston Medical Ctr. Corp.* 725 F.3d 34,. *See also Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (listing the following factors as ones to consider in determining whether a person is an employer: whether the person "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records").

*Spears*, 2024 U.S. App. LEXIS 15002 at *16-18.

"To be an employer under the Act, a supervisor 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" *Spears*, 2024 U.S. App. LEXIS 15002 at *6 (quoting *Patel*, 803 F.2d at 638). Such involvement includes "control over 'significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee.'" *Lamonica*, 711 F.3d at 1314 (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)).

"Federal courts look to the economic reality of the relationship between the parties in order to determine whether an individual FLSA defendant is an 'employer' subject to FLSA liability." *Mendoza v. Disc. C.V. Joint Rack & Pinion Rebuilding, Inc.*, 101 F. Supp. 3d 1282, 1290 (S.D. Fla. 2015) (finding sole owner and president individually liable). In the Eleventh Circuit, a separate four-factor economic reality test is used to determine liability by evaluating whether the individual: (i) had the power to hire and fire employees; (ii) supervised and controlled employee work schedules or conditions of employment; (iii) determined the rate and method of payment; and (iv) maintained employment records.[1] *Id.* Whether an individual falls within the classification of "employer" under

---

[1] There is some authority that an alternate "disjunctive rule" to determine individual liability exists in the Eleventh Circuit. The disjunctive rule refers to the test articulated in *Patel* that requires an examination of whether an individual was "involved in the day-to-day operation of the company" or had "some direct responsibility for the supervision of the employee" to be found personally liable. 803 F.2d at 638. *See Santos v. Cuba Tropical, Inc.*, 829 F. Supp. 2d 1304, 1311 (S.D. Fla. 2011) for a thorough explanation of the disjunctive rule and the "alternative test". While *Mendoza*, *supra*, states the four-factor economic-reality test is the Eleventh Circuit standard, *Moreira v. Americlean Bldg. Maint., Inc.*,

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

the FLSA turns not on "technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez*, 515 F.3d at 1160.

Because business owners and corporate officers are more likely to exercise operational control over a business entity employing individuals under the FLSA, they are more susceptible to personal liability under the Act than wage-earning employees of the business—although individual liability is not limited to officers and owners. *Spears*, 2024 U.S. App. LEXIS 15002 at *6. Individual liability of an owner or corporate officer is established where they have demonstrated involvement in the company's day-to-day operations, including "involvement in the business operations of the company, or control over the company's purse strings." *Id.* at 6-7 (citing *Alvarez Perez*, 515 F.3d at 1160-62 (collecting cases)).

The Court properly finds that Defendant Fernandez is subject to individual liability based on his involvement in and direct responsibility for Viormar's financial affairs and management, and Plaintiff's employment therewith. The evidence is that Defendant Fernandez attested to the State of Florida that he was and remains the corporate officer financially responsible for Viormar's affairs from 2012 through the present. (ECF No. 34 at ¶ 27.) Throughout Plaintiff's employment with Viormar, Defendant Fernandez controlled the company's purse strings as the alleged sole owner of Viormar, and an authorized individual on Viormar's sole bank account held with Ocean Bank. (*Id.* at ¶¶ 28, 53.) And as further described in Section IV(A)(i) above, Defendant Fernandez must be deemed Mr. Aneiros' employer given that Fernandez instructed Mr. Aneiros to perform each of his job duties, specified how he was to perform those duties, and provided Mr. Aneiros with the tools and materials necessary to do so. Therefore, the Court properly finds that Defendant

---

2016 WL 739657 (S.D. Fla. Feb. 25, 2016) recognizes the disjunctive rule as the test in the Eleventh Circuit. However, Liz McKinnon is individually liable under either test as the undisputed facts in this section demonstrate.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884    FAX 305.230.4844
www.fairlawattorney.com

Fernandez must be held liable, jointly and severally with Viormar, for his failure to pay Mr. Aneiros at least the minimum wages prescribed under the FLSA and FMWA.

**C. <u>Mr. Aneiros is Subject to Individual Coverage Under the FLSA</u>**

Entitlement to a claim for unpaid minimum wages can be proven by establishing one of two types of coverage, "either: (1) 'individual coverage,' in which the employee was 'engaged in commerce or in the production of goods for commerce,' or (2) 'enterprise coverage,' in which the employee was 'employed in an enterprise engaged in  commerce or in the production of goods for commerce.'" *Martinez v. Jade Palace*, 414 Fed. Appx. 243, at 244-45 (11th Cir. 2011). Individual coverage exists if the employee "regularly us[es] the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006); *see also* 29 C.F.R. § 776.23(d)(2) (stating that "employees who regularly use instrumentalities of commerce, such as the telephone, telegraph and mails for interstate communication are within the scope of the Act").

Viormar was formed in Curacao and has represented to the U.S. Department of Treasury that at least three Curacao-based entities are direct 25% shareholders of Viormar. (ECF No. 34 at ¶¶ 22, 28.) The corporation was created to facilitate the export of merchandise between foreign countries such as Venezuela and China, in addition to renting warehouse space to commercial tenants. (*Id.* at ¶¶ 23, 30.) As part of his job duties for Defendants, Mr. Aneiros was regularly required to send mail to/for Defendants, **including to Curacao**, using shipping materials that Defendant Fernandez provided to him. (*Id.* at ¶¶ 49-50.) Contrary to Defendants' assertion that sending and/or receiving mail to/from Curacao "does not constitute interstate commerce" within the meaning of the FLSA (ECF No. 33, at 21), the Act specifically defines "commerce" to include

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

"communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

During Mr. Aneiros' employment with Defendants, he was responsible for receiving Defendants' mail every single day. (ECF No. 34, at ¶ 49.) The parcels that Mr. Aneiros regularly received on behalf of Defendants included materials such, lamps, light fixtures, and skylights for Mr. Aneiros to install at the Viormar Warehouse, all of which traveled through interstate commerce. (ECF No. 34-14, at 33-34, 40-43.)

Mr. Aneiros further engaged in interstate commerce through his job duties for Defendants by regularly depositing checks into Viormar's bank account. (ECF No. 34, at 52.) This fact is evidenced through Mr. Aneiros' text messages to Defendant Fernandez sending photos of Viormar's Ocean Bank deposit receipts, as well as deposit receipts that are still in Mr. Aneiros' possession. (ECF No. 34-16.) Given that Defendants have represented to the U.S. Department of Treasury that 75% of Viormar's shares are held by Curacao-based entities, the deposits made by Mr. Aneiros must be viewed as direct involvement and participation in interstate commerce. Accordingly, Mr. Aneiros' work for Defendants undoubtedly falls within the purview of the FLSA and FMWA.

### D. **Defendants Violated the TVPA**

As held by the Eleventh Circuit Court of Appeals, the TVPA "makes it a crime to obtain labor or services through physical or psychological coercion." *U.S. v. Paulin*, 329 Fed. Appx. 232, 233 (11th Cir. 2009). Specifically, the TVPA prohibits:

> knowingly provid[ing] or obtain[ing] the labor or services of a person by any one of, or by any combination of, the following means—
>
> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or any person;

15

    (2)  by means of serious harm or threats of serious harm to that person or another person;

    (3)  by means of the abuse or threatened abuse of law or legal process; or

    (4)  by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a). Although Section 1589 is a criminal statute, a victim may bring a civil action to enforce its provisions under 18 U.S.C. § 1595(a).

After finding Mr. Aneiros living in homeless near the Viormar Warehouse, Defendants capitalized off of his vulnerability by coercing Mr. Aneiros to sleep inside of the warehouse in exchange for free labor. (ECF No. 34, at ¶¶ 32-35, 56.) The Viormar Warehouse is unfit for residential purposes. (*Id.* at ¶ 36.) Once Defendant Fernandez acquired Viormar and the warehouse from his father, Fernandez told Mr. Aneiros that he inherited Mr. Aneiros with the building—and that Mr. Aneiros was his property. (ECF No. 34, at ¶ 37.) Defendant Fernandez further instructed him not to tell anyone that he was living and working at the Viormar Warehouse, and that if Mr. Aneiros ceased performing work for Defendants' benefit, he would be evicted. (*Id.* at 38.)

From about 2012 (when Defendant Fernandez and his daughter became officers/directors of Viormar) until the present, Defendants have exploited Mr. Aneiros for his labor in connection with their business ventures, as well as for the personal gain of Defendant Fernandez and his family. As described above, Mr. Aneiros has continuously performed work for Viormar including repairing, maintaining, and renovating the Viormar Warehouse (ECF No. 34, at ¶¶ 42-44); finding and evicting commercial tenants of the Viormar Warehouse (*Id.* at ¶ 47); notarizing documents for Defendants (*Id.* at ¶ 48); sending and receiving Defendants' mail (*Id.* at ¶¶ 49-51); depositing checks

16

into Viormar's bank account (ECF No. 34, at ¶ 52); coordinating/meeting with contractors and building inspectors, and taking other measures to ensure that the Viormar Warehouse remained in compliance with local building codes (*Id.* at ¶ 54). Defendants have never paid Mr. Aneiros a penny for this work (*Id.* at ¶ 56).

Additionally, as a condition of Mr. Aneiros' continued tenancy in the Viormar Warehouse, Defendant Fernandez required Mr. Aneiros to perform work outside of Viormar for the benefit of Fernandez and his family. Defendant Fernandez made Mr. Aneiros renovate his home by fixing broken floors, roof tiles, and fencing so that Fernandez could sell the home (*Id.* at ¶ 55). When Defendant Fernandez moved from Miami to Orlando, he made Mr. Aneiros load/unload Fernandez's furniture and personal belongings, and haul them in a moving truck. (*Id.*) He would require Mr. Aneiros to perform automotive work on his family's cars including oil changes, tune-ups, brake changes, paint jobs, and an engine change for his son. (ECF No. 34-1, at 78:1-23, 107:8-109:7.) After Defendant Fernandez's father died, Fernandez made Mr. Aneiros sell his father's car (ECF No. 34 at ¶ 55.) He further instructed Mr. Aneiros to perform work for his/his daughter's additional companies including collecting rent for their property management company, constructing and moving displays for their home healthcare company and painting its logo on the side of the Viormar Warehouse. (*Id.*)

Defendants coerced Mr. Aneiros into performing all of the above labor through their continued threats of serious harm. The TVPA defines "serious harm" as:

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

Several courts have recognized that the "loss of a place to live" constitutes the type of "serious harm" the TVPA was meant to encompass. *See Glagola v. MacFann*, 2023 WL 7271340, at *6 (W.D. Pa. Nov. 3, 2023) (finding that "homelessness" is a "serious harm" for purposes of 18 U.S.C. § 1590) (citing *Bistline v. Parker*, 918 F.3d 849, 871-72 (10th Cir. 2019) (finding that "loss of a place to live" is a serious harm)). Moreover, in ruling on Defendants' Motion to Dismiss (ECF No. 16), this Court has already determined that threats of being forced into homelessness constitute threats of serious harm within the meaning of the TVPA. (*See* ECF No. 28, at 5-6.)

"In assessing a claim of forced labor under the TVPRA, 'the vulnerabilities and characteristics of the specific victim become extremely important because one individual could be impervious to some types of coercion that cause another to acquiesce in providing forced labor.'" *Arreguin v. Sanchez*, 298 F. Supp. 3d 1314, 1325 (S.D. Ga. 2019) (quoting *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018)). "Thus, 'the relevant inquiry is whether the defendant 'intentionally caused the oppressed person reasonably to believe, given her special vulnerabilities, that she had no alternative but to remain in involuntary service for a time.'" *Arreguin*, 298 F. Supp. 3d at 1325.

Here, Defendants preyed on Mr. Aneiros' vulnerabilties knowing full well that he had nowhere to live other than inside of the Viormar Warehouse. After living and working inside of the warehouse for approximately fourteen years, Mr. Aneiros believes that he has been enslaved by Defendants. (ECF No. 34 at ¶ 39.) Defendant Fernandez has reinforced this conception by exploiting Mr. Aneiros for unpaid labor, having him live on Fernandez's property in untenable conditions, and stating to Mr. Aneiros that Fernandez wanted him to move to Fernandez's farm so that he could grow crops there. (*Id.* at ¶ 40.) Although Mr. Aneiros no longer wishes to continue living in solitude inside of the Viormar Warehouse, he simply has nowhere to go. (ECF No. 34-1,

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Aneiros Dep., 48:21-25, 89:3-6; ECF No. 34-8, Christina Fernandez Dep., 80:21-23; ECF 34, at ¶ 57.) Therefore, Defendants have violated the TVPA by procuring Mr. Aneiros' labor through their continued threats of eviction—which they are aware would result in Mr. Aneiros being forced into homelessness.

## IV. CONCLUSION

Mr. Aneiros is entitled to summary judgment in his favor on the issues that: (i) Defendants were his employers for purposes of the FLSA and FMWA; (ii) Mr. Aneiros' work for Defendants is subject to individual coverage under the FLSA; and (iii) Defendants have violated the TVPA by obtaining his labor through their continued threats of serious harm. Accordingly, Mr. Aneiros requests that the Court enter summary judgment in his favor (as to liability) with respect to all counts of the Second Amended Complaint, holding Defendants jointly and severally liable for his damages, and granting such other and further relief as the Court deems just and proper. The only issues to be addressed at the trial of this case should involve the hours that Mr. Aneirs worked, and the wages and non-monetary damages to which he is entitled to recover from Defendants.

Respectfully submitted this 3rd day of January 2025.

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiff*

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*